IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEVEN KENT BASS, §
SPN NO. 0521748, §
§
Plaintiff, §
§
v. §
§ CIVIL ACTION NO. H-13-3169
ADRIAN GARCIA, in His §
Individual and Official §
Capacities as Sheriff of §
Harris County, Texas, §
§
Defendant. §

**MEMORANDUM OPINION AND ORDER**

Steven Kent Bass, an inmate of the Harris County Jail (JA09), filed a Prisoner Civil Rights Complaint ("Complaint") (Docket Entry No. 1) under 42 U.S.C. § 1983 alleging that he was denied adequate medical care by Harris County, Texas, Sheriff Adrian Garcia. Sheriff Garcia has filed a Motion for Summary Judgment (Docket Entry No. 13) with Defendant's Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment ("Records and Affidavits") (Docket Entry No. 14). For the reasons explained below, Sheriff Garcia's motion will be granted.

## I. Bass's Claims and Procedural History

Bass claims that the policies and procedures instituted by Sheriff Garcia at the Harris County Jail denied him medical care

for a serious medical condition, causing him prolonged pain and suffering. Complaint, Docket Entry No. 1, p. 3.

Bass alleges that during February of 2013 he began to experience severe back pain. Id. at 7. After appearing in the 209th District Court of Harris County, Texas ("state court") and complaining of his malady, the state court ordered Sheriff Garcia to take necessary steps to ensure that qualified personnel performed a medical exam to determine if Bass needed medical care or medication. Id. at 13. During March of 2013 Bass was seen by the Harris County Jail Clinic doctor. Id. at 7. The doctor took X-ray images of Bass's back and referred him to an orthopedic specialist. Id.

Bass alleges that during April of 2013 the pain in his back became more severe. Id. He was taken to the Lyndon Baines Johnson General Hospital for a magnetic resonance imaging scan of his back. Id. On a second visit to the hospital, the orthopedic specialist diagnosed Bass with L5-S1 spondylolisthesis ("condition"). Id. Bass argues that the specialist told him his condition was severe enough to warrant surgery and that he would refer him to a surgeon. Id. At the time of the complaint, however, Bass alleges that he had not seen the surgeon. Id. at 8.

Bass alleges that during May of 2013 his condition became aggravated after he was hit by a broom handle during a jail incident involving a fellow inmate. Id. at 7. He claims that he sought medical treatment for the injury resulting from the

incident, but received no care. Id. Bass filed a grievance, but alleges that it was closed with no action taken. Id. He also alleges that he filed several medical requests during June of 2013, but received no response.

Bass obtained a second state court order in June of 2013 ordering Sheriff Garcia to perform another medical exam to determine the need for treatment or medication. Id. at 14. Bass alleges that during July and August of 2013 he was still experiencing severe pain and submitted several medical requests for relief, but received no response. Id. at 7. He then obtained a third state court order for a medical exam. Id. at 15. Bass alleges that the next day he was informed by the attending doctor that he had missed two prior appointments to see a surgeon. Id. at 7. Bass began to save copies of the medical requests he made in August and September of 2013. Id. at 9-12. A fourth state court order for a medical exam was entered during September of 2013. Id. at 16.

Bass also alleges that during September of 2013 he filed a medical grievance concerning his condition, but did not receive the hearing promised by his inmate handbook. Id. at 7-8. He received an interview concerning his grievance, but was not satisfied with the outcome. Id. at 8. Bass requested to see his medical file, but was not granted access. Id. At the time of filing the claim, Bass alleges that he has not been treated for his condition by an orthopedic specialist. Id.

Bass requests a declaration that Sheriff Garcia has violated his civil rights, compensatory damages, an order to Sheriff Garcia that he provide the medical care deemed necessary by the orthopedic specialist, and any other relief the court deems necessary. Id. at 4.

In response to Bass's Complaint, Sheriff Garcia filed Defendant's Original Answer in which he requested a trial by jury ("Answer") (Docket Entry No. 9), along with his pending Motion for Summary Judgment. Bass filed Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") (Docket Entry No. 16), to which Sheriff Garcia filed Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment ("Reply") (Docket Entry No. 17).

## II. **Summary Judgment Standards - Qualified Immunity**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must determine whether the pleadings and records indicate there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ P. 56(c); Beard v. Banks, 126 S. Ct. 2572, 2578 (2006); Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012) (citing Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986)). If the moving party meets this burden, the nonmoving party must then come forward and establish the specific material facts in dispute. Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986)). If the nonmoving party is not able to identify anything in the record to support its claim, summary judgment is appropriate. Id. (citing Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002)).

A qualified immunity defense, however, alters the usual summary judgment burden of proof. Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010). In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry. Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014). The first prong asks whether the facts taken in the light most favorable to the party alleging the injury show the official's conduct violated a federal right. Id. The second prong asks whether the right under scrutiny was clearly established at the time of the violation. Id. at 1866. Governmental actors are shielded from liability if their actions did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. Id. The relevant question is whether the state of the law at the time of the incident provided a fair warning to

the defendant that the alleged conduct was unconstitutional. Id. The plaintiff bears the burden of negating qualified immunity by showing that the official's allegedly wrongful conduct violated clearly established law. Brown, 623 F.3d at 253.

### III. Sheriff Garcia's Arguments and Supporting Evidence

Sheriff Garcia asserts the defense of qualified immunity and argues that Bass has failed to prove that he was denied access to adequate medical care. Docket Entry No. 9, p. 1. He also argues that Bass fails to state a claim upon which relief can be granted. Id. Sheriff Garcia contends that the Records and Affidavits show that Bass was not injured by the quality of care he was given for his condition. Id. Garcia further contends that he did not have constructive knowledge that he was a moving force behind an official policy or custom that denied Bass a constitutional right. Docket Entry No. 13, p. 16. Garcia argues that Bass received extensive medical care for the duration of his incarceration. Id. at 25. He also argues that Bass's mere dissatisfaction with the medical care he was provided is insufficient to demonstrate a constitutional violation. Id. at 28-30.

In support of his arguments, Sheriff Garcia has submitted the following records:

Exhibit 1: Plaintiff's Complaint (Docket Entry No. 14-1);

Exhibit 2: Affidavit of Rosa Ming (Custodian of Records) (Docket Entry No. 14-2);

Exhibit 3: Affidavit of Sheriff Adrian Garcia (Docket Entry No. 14-3);

Exhibit 4: Affidavit of Michael M. Seale, M.D. (medical care) (Docket Entry No. 14-4); and

Exhibit 5: Medical Records (Docket Entry No. 14-5).

The Records and Affidavits are summarized in the following narrative:

Bass was incarcerated in the Harris County Jail on January 12, 2013. The medical records kept by the Harris County Sheriff's Office reflect that Bass first complained of back pain on January 22, 2013. Docket Entry No. 14-4, p. 3. The nurse referred him to a doctor for an appointment. Id. On January 29, 2013, Bass was evaluated by a physician and a radiologist and given a prescription for Ibuprofen. Id. The records provided by the Harris County Sheriff's Clinic Pharmacy document numerous prescriptions that were filled in connection with Bass's condition since then. Docket Entry No. 14-5, pp. 1-9.

On May 3, 2013, Bass was taken to Lyndon Baines Johnson General Hospital for a magnetic resonance imaging scan of his back. Docket Entry No. 14-4, pp. 4-5. The scan results confirmed Bass's condition. Id. at 5. On May 7, 2013, the following entry was made by the specialist who had previously evaluated Bass's condition:

> Orthopedist evaluation: Spondylolisthesis L5S1 with nerve involvement right > left. Recommend pain management evaluation. Question if epidural steroid injection would help or if needs surgery.

Id.

During the following months Bass missed two appointments with a neurosurgeon -- on June 28, 2013, and August 2, 2013. Id. at 6-7. Bass made numerous requests for a hospital appointment with the neurosurgeon. The county jail medical staff responded, providing Bass with examinations and treatment by nurses and physicians and with pain medication. Id. at 6-8 and 28 ¶ 8.

On November 6, 2013, Bass slipped and fell in the shower area of the jail. Id. at 8. He was taken to the Ben Taub Emergency Center. Id. at 9. After a thorough examination Bass was discharged with a recommendation for follow-up specialty clinics. Id. at 12. He was given a neurosurgery evaluation on November 13, 2013. Id. The course of action decided on by the neurosurgeon was to "continue conservative management[,] . . . pain control using Vicodin[,] . . . [and physical therapy/occupational therapy]." Id.

Bass continued to complain of pain from his condition and to demand surgery. Id. at 13. He was told that he would continue to receive medication and would be receiving physical therapy, diet management, and pain management. Id. Bass was provided five physical therapy sessions from January 8 to March 14, 2014. Id. at 13-27. On the last session, the therapist noted that:

> ASSESSMENT:
> [Bass] has made very limited gains over consecutive [physical therapy] treatment sessions [because] of poor adherence/compliance to [the home exercise program]. Therefore, [Bass is] to be [discharged] at this time and [continue the home exercise program] independently.

Id. at 27. The most recent entries in his medical records, March 25 and March 28, 2014, indicate that Bass was still

complaining of pain from his condition and requesting to see the orthopedist. Id. at 28.

The affidavit by Dr. Michael M. Seale, Executive Director for Health Services at the Harris County Sheriff's Office, states that he reviewed Bass's medical records. Id. at 28. In his capacity as a medical professional, Dr. Seale concludes that "during his incarceration, Mr. Bass'[s] medical and mental health issues were recognized and appropriately addressed" and that "there is nothing to indicate that Bass failed to receive any necessary medical care in the Jail for any medical condition of which he complained to medical personnel." Id. ¶ 9. Dr. Seale further concludes that the medical policies and procedures at the Harris County Jail fully comply with state and national standards and did not cause injury to Bass. Id. ¶ 10. Dr. Seale also states that

> . . . qualified personnel did perform medical exams repeatedly to determine if inmate Bass needed medical care and/or medication and then based on their medical judgment ordered appropriate care or medications.

Id. at 29 ¶ 11.

The affidavit provided by Sheriff Garcia states that he had no personal contact or involvement with Bass or the decisions regarding his medical care. Docket Entry No. 14-3, p. 1. He also states that the Harris County Sheriff's Office has policies and procedures to provide adequate medical care to all inmates. Id. Sheriff Garcia also states that he received no court orders regarding the medical care of Bass. Id.

## IV. Analysis

Section 1983 provides a mechanism for private parties to enforce federally protected statutory or constitutional rights against defendants who act under the color of state law. See 42 U.S.C. § 1983. To establish liability under a § 1983 claim, the plaintiff must prove: (1) the deprivation of a right secured by federal law, (2) the deprivation occurred under the color of state law, and (3) the deprivation was caused by a state actor. Uresti v. Reyes, 506 F. App'x 328, 329 (5th Cir. 2013) (per curiam) (citing Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)). Claims under § 1983 may be brought against a person in his individual or official capacity. Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009). Personal capacity suits seek to impose liability upon a government official as an individual while official capacity suits are generally another way of pleading an action against the entity of which the officer is an agent. Id. (quoting Monell v. Dep't of Soc. Servs. of the City of N.Y., 98 S. Ct. 2018, 2035 n.55 (1978)) (internal quotation marks and citations omitted). In a personal capacity suit, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Id. (quoting Kentucky v. Graham, 105 S. Ct. 3099, 3105 (1985)) (internal quotation marks and citations omitted). Official capacity liability, however, requires that the entity itself be the "moving force" behind the deprivation

of federal right and that the entity's "policy or custom" play a part in the violation of federal law. Graham, 105 S. Ct. at 3105.

**A. Denial of Medical Treatment**

The Eighth Amendment, applied to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes. Morris v. Livingston, 739 F.3d 740, 746 (5th Cir.), cert. denied, 2014 WL 1515174 (quoting Wilson v. Seiter, 111 S. Ct. 2321, 2323 (1991)) (internal quotation marks and citations omitted). The principles animating Eighth Amendment establish the government's obligation to provide medical care for those whom it is punishing by incarceration. Id. (quoting Estelle v. Gamble, 97 S. Ct. 285, 290 (1976)) (internal quotation marks and citations omitted).

In order to state a cognizable Eighth Amendment claim in the medical context, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Id. at 747 (quoting Estelle, 97 S. Ct. at 290) (internal quotation marks and citations omitted). The Court explains the test as follows:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. . . . The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a

> prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety. . . .

Id. at 747-48 (quoting Farmer v. Brennan, 114 S. Ct. 1970, 1977 (1994)) (internal quotation marks and citations omitted).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Blank v. Eavenson, 530 F. App'x 364, 368 n.7 (5th Cir.), cert. denied, 134 S. Ct. 623 (2013) (internal quotation marks and citations omitted). Deliberate indifference when alleging inadequate medical treatment requires a showing that officials refused to treat the prisoner, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs. Coleman v. Sweetin, 745 F.3d 756, 765 (5th Cir. 2014) (internal quotation marks and citations omitted). Deliberate indifference only occurs if a prison official (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it. Rogers v. Boatright, 709 F.3d 403, 410 (5th Cir. 2013) (quoting Farmer, 114 S. Ct. at 1984) (internal quotation marks and citations omitted). A delay of medical care does not violate the Eighth Amendment unless there has been deliberate indifference that results in substantial harm. Choyce v. Velez, 465 F. App'x 367, 368 (5th Cir. 2012).

The court's review of the record leads it to conclude that Bass was not denied medical care for his condition. Bass himself concedes this point in his Response.[1] Even if he did not explicitly concede the point, Bass's claim is so "blatantly contradicted by the record" that the court cannot adopt his version of the facts for the purposes of ruling on the Motion for Summary Judgment.[2] The medical records provided by Sheriff Garcia, along with the Complaint and Response by Bass, reflect that Bass was given care for his condition on numerous occasions. While incarcerated in the Harris County Jail Bass was able to consult with multiple physicians, nurses, clinical specialists, and other health professionals about his condition. As a result of his condition and requests for consultations, Bass received examinations, hospitalization, medications, diet management, and

---

[1]"Plaintiff does not dispute that medical care was provided to him at the Harris County Jail Clinic and local hospitals . . . ." Response, Docket Entry No. 16, p. 1.

[2]See Scott v. Harris, 127 S. Ct. 1769 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). See also Matsushita, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"); Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 ("By its very terms, [Rule 56(c) of the Federal Rules of Civil Procedure] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

physical therapy, all tailored to address and alleviate the symptoms of his condition.

The court also concludes that Sheriff Garcia did not act with deliberate indifference toward Bass's health. At no time did Garcia have knowledge that Bass faced a substantial risk of bodily harm from his condition; nor did he disregard a substantial risk by failing to take reasonable measures to abate it. The court concludes that by means of the medical policies and procedures of the Harris County Jail, Sheriff Garcia provided adequate medical care to Bass to prevent a substantial risk of bodily harm. The court concludes that Garcia did not deprive Bass of medical care in violation of the Eighth Amendment.

**B. Difference of Opinion About Medical Treatment**

Bass argues that he was denied medical care because he was not given the treatment recommended by an orthopedic specialist. Response, Docket Entry No. 16, p. 9 ¶ A.[3] The opinion that surgery was necessary to alleviate Bass's condition was not shared by all medical experts who evaluated Bass.[4] At best, Bass presents a

---

[3]The record casts significant doubt as to whether surgery was the ultimate recommendation of the specialist. After examining the results of Bass's x-rays and magnetic resonance imaging scan, the orthopedist recommended "pain management evaluation" and noted that there was a "[q]uestion if . . . [Bass] needs surgery." Docket Entry No. 14-4, p. 5, second entry for 5/7/13.

[4]See, e.g., Docket Entry No. 14-4, p. 12 (11/13/13 note that evaluated Bass's condition recommended "conservative management . . . pain control . . . [and] PT/OT" as opposed to surgery).

difference of opinion between medical professionals concerning the appropriate course of treatment for his condition.

A doctor's failure to agree with another doctor suggests nothing more than a difference of medical opinion and does not constitute deliberate indifference to serious medical needs. Clifford v. Doe, 303 F. App'x 174, 175 (5th Cir. 2008) (per curiam) (citing Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999)) (internal quotation marks and citations omitted) (concluding that the failure of prison medical staff to follow a private physician's recommended treatment plan for an inmate's back condition did not constitute deliberate indifference to the inmate's serious medical needs). A policy that allows prison medical officials to either approve or disapprove another physician's recommendation raises no constitutional issue. See id. at 176. Diagnostic techniques and the form of treatment administered are classic examples of matters reserved for medical judgment. Estelle, 97 S. Ct. at 293.

The fact that Bass was not able to receive surgery to alleviate the symptoms of his condition does not constitute deliberate indifference on the part of Sheriff Garcia. Whether or not Bass's orthopedic specialist recommended surgery is irrelevant because, at best, it is a difference of medical opinion. Likewise, the fact that Bass still experiences pain from his condition because he has not had surgery does not create a fact issue as to deliberate indifference. Consequently, Bass is unable to sustain an Eighth Amendment claim. The medical treatment Bass has received

is not necessarily the "best that money could buy," but minimal deficiencies in the treatment he did receive do not rise to the level of a § 1983 claim. See Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992).

**C. Qualified Immunity**

Sheriff Garcia asserts qualified immunity as an affirmative defense against Bass's claim. Docket Entry No. 9, pp. 1-2. Qualified immunity is a defense that is only relevant to individual capacity claims. See Sanders-Burns v. City of Plano, 594 F.3d 366, 371 (5th Cir. 2010).

The aim of qualified immunity is to balance two significant interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citations omitted).

For the reasons explained above in Parts IV-A and IV-B, the court concludes that the facts taken in the light most favorable to Bass do not show that Garcia violated his Eighth Amendment rights. As a result, Sheriff Garcia is entitled to qualified immunity in his individual capacity.

**D. Municipal Liability**

For the purposes of § 1983, a "person" includes municipal entities such as a county. Hampton Co. Nat'l Surety, LLC v. Tunica Cnty., Miss., 543 F.3d 221, 224 (5th Cir. 2008). By suing Sheriff Garcia in his official capacity as Sheriff of Harris County, Bass sues Harris County itself. See Bennett v. Pippin, 74 F.3d 578, 584 (5th Cir. 1996) ("A suit against the Sheriff in his official capacity is a suit against the County.").

A plaintiff suing a municipal entity under § 1983 must show that his injury was caused by a municipal policy or custom regardless of whether he is seeking relief in law or in equity. Los Angeles Cnty. v. Humphries, 131 S. Ct. 447, 449 (2010). To prove municipal liability, a plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Whitley v. Hanna, 726 F.3d 631, 649 (5th Cir. 2013), cert. denied, 134 S. Ct. 1953 (2014) (internal quotation marks and citations omitted). Knowledge on the part of a policymaker that a constitutional violation is likely to occur from official custom or policy is a sine qua non of municipal liability under § 1983. Curtis v. Anthony, 710 F.3d 587, 595 (5th Cir. 2013) (internal quotation marks and citations omitted). The plaintiff "must establish that the body governing a municipality, or an official to whom the body had delegated its policy-making authority, had actual or constructive knowledge of the custom or policy at issue." Id.

The court's review of the record leads it to conclude that Bass is unable to point to any official policy or custom by a Harris County policymaker that led to a violation of his constitutional rights.[5] The conclusion that none of his constitutional rights were violated forecloses Bass's ability to allege that Sheriff Garcia, Harris County, or any other policymaker had actual or constructive knowledge of a custom or policy in violation of the Constitution that resulted in injury to Bass. As a result, there is no policy or custom Bass can allude to as a "moving force" that violated his Eighth Amendment protections against cruel or unusual punishment. Consequently, Harris County, the principal of Garcia, is entitled to summary judgment.

## V. Conclusion and Order

"Continuing back pain is unpleasant." Mayweather, 958 F.2d at 91. "Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." Id. For the reasons explained above, the court **ORDERS** the following:

1. Sheriff Adrian Garcia's Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**.

[5]In his Response, Bass produces a portion of the letter from the United States Department of Justice (USDOJ) to Harris County Judge Ed Emmet dated June 4, 2009, regarding an investigation of the Harris County Jail conducted pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997. Docket Entry No. 16, p. 5. The court concludes, however, that the letter, viewed in the light most favorable to Bass, is insufficient to show the existence of an official policy or custom by Harris County that violated his constitutional rights.

2. The Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 (Docket Entry No. 1) filed by Bass is **DISMISSED WITH PREJUDICE**. Fed. R. Civ. P. 56(c).

**SIGNED** at Houston, Texas, on this 18th day of June, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE